**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HUGO EDUARDO HERNANDEZ DELGADILLO**<br><br>Petitioner,<br><br>v.<br><br>**TODD BLANCHE, *et al.*,**<br><br>Respondents. | : | **CIVIL ACTION**<br><br><br><br><br>**No. 26-6195** |

**Perez, J.** **August 31, 2026**

# MEMORANDUM

Petitioner Hugo Eduardo Hernandez Delgadillo is a native and citizen of Mexico who entered the United States with a nonimmigrant visitor visa on or about March 9, 2025. His visa expired on September 8, 2025, but Petitioner remained in the United States, overstaying his visa. Petitioner has no criminal record. On August 8, 2026, Petitioner married a United States citizen. On August 23, 2026, Petitioner and his new wife went to the Philadelphia International Airport to depart for their honeymoon in Orlando, Florida. Immigration and Customs Enforcement (ICE) arrested him at the airport, pursuant to an administrative arrest warrant. *See* I-200 Warrant, Gov't Ex. B, ECF No. 4-2. The warrant originally filed by the Government was unsigned. *Id.* A signed copy of the warrant was not electronically uploaded to Petitioner's file at the time the Government responded to this petition on August 27, 2026. ECF No. 9. The Government supplemented the record with a signed copy of the warrant on August 31, 2026. *Id.*

On August 23, 2026, ICE additionally placed Petitioner in removal proceedings. *See* Notice to Appear ("NTA"), Gov't Ex. A, ECF No. 4-1. The Government provided Petitioner a form titled "Notice of Custody Determination," indicating an officer determined Petitioner would be detained

by the Department of Homeland Security (DHS). Notice of Custody Determination, Gov't Ex. D, ECF No. 4-4. On the Notice, Petitioner requested an immigration judge review the officer's custody determination. *Id.* A custody redetermination hearing is scheduled for September 3, 2026, at the Elizabeth Immigration Court in New Jersey. Not. Custody Redetermination Hr'g, Gov't Ex. E, ECF No. 4-5. Petitioner is currently detained at the Federal Detention Center in Philadelphia.

On August 24, 2026, Petitioner filed a petition for a writ of habeas corpus, arguing his detention is unlawful and seeking immediate release. The same day, the Court ordered the Government to file a response and not to transfer Petitioner outside the Eastern District of Pennsylvania, pending further order of the Court.

On August 27, 2026, the Government timely filed its response, arguing that the Court should deny the petition because (i) the Court lacks jurisdiction under 8 U.S.C. § 1252(g); (ii) Petitioner is lawfully detained under 8 U.S.C. § 1226(a); and (iii) Petitioner's detention does not violate the Fifth Amendment's Due Process Clause. In addition to denying the petition, the Government asks the Court to vacate its order preventing Petitioner's transfer so he may attend his scheduled immigration proceedings. Petitioner filed a response, arguing that (i) § 1226(a) requires a validly executed arrest warrant, which the Government did not have because the warrant provided by the Government is unsigned; (ii) Respondents fail to satisfy the conditions for warrantless arrest; and (iii) the administrative procedure cannot remedy his constitutional injury. The Court agrees with Petitioner and orders his immediate release.

## I. Legal Standard

A federal district court may issue a writ of habeas corpus in favor of an individual detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. The petitioner bears the burden of showing his detention is unlawful. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## II. Jurisdiction

### A. Section 1252(g)

The Immigration and Nationality Act (INA) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). This provision does not "sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, . . . the language . . . refer[s] to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018); *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'"); *see also Tazu v. Atty. Gen. U.S.*, 975 F.3d 292, 296 (3d Cir. 2020) ("Section 1252(g) does not sweep broadly. It reaches only these three specific actions, not everything that arises out of them.").

Contrary to the Government's framing, Petitioner does not challenge the Government's decision to initiate removal proceedings against him merely because an NTA was issued on the day of his arrest. Rather, he challenges the lawfulness of his detention during the pendency of those removal proceedings, which the Government contends is lawful under § 1226(a). Section 1252(g) does not strip the Court of jurisdiction to resolve the question of whether Petitioner's detention is lawful. *See Anirudh v. McShane*, No. 25-6458, 2025 WL 3527528, at *3 (E.D. Pa. Dec. 9, 2025) (finding § 1252(g) does not oust the court of jurisdiction over habeas petition that challenges the lawfulness of his detention, not the commencement or adjudication of an action against him or any execution of his removal); *Dos Reis v. McShane*, No. 26-3775, 2026 WL 1746649, at *2 (E.D. Pa. June 17, 2026).

### B. Exhaustion

The Government briefly mentions that Petitioner has an administrative process under the INA to challenge the detention decision, so he must wait until that process is complete to seek review of its sufficiency. An individual seeking a writ of habeas corpus generally must exhaust his claims through available administrative procedures. *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000). This requirement derives from the common law, not a statute. *See Garcia v. Hyde*, 817 F. Supp. 3d 112, 125 (D.R.I. 2025). "Statutory exhaustion deprives a federal court of jurisdiction, whereas common-law exhaustion 'cedes discretion to a [federal] court to decline the exercise of jurisdiction." *Id.* (alteration in original) (quoting *Brito v. Garland*, 22 F.4th 240, 255 (1st Cir. 2021)). The Court may waive exhaustion if it would be futile, *Duvall v. Elwood*, 336 F.3d 228, 234 (3d Cir. 2003); if it would provide no genuine opportunity for adequate relief, *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003); if the issue presented involves only statutory construction, *Vasquez v. Strada*, 684 F.3d 431, 433–34 (3d Cir. 2012); or "if a substantial doubt exists about whether the agency is empowered to grant meaningful redress," *Portela-Gonzalez v. Sec'y of Navy*, 109 F.3d 74, 77 (1st Cir. 1997). *See also Dos Reis*, 2026 WL 1746649, at *3 (excusing exhaustion where petitioner challenged legality of initial deprivation of liberty, which cannot be cured by later bond hearing).

Petitioner challenges his arrest and detention based on ICE's compliance with the INA's warrant requirement and based on the U.S. Constitution. Petitioner argues ICE conducted no individualized assessment of whether he was a danger or flight risk before arresting him, in violation of Petitioner's due process rights. The Immigration Court and BIA lack authority to adjudicate Petitioner's constitutional challenge. *Matter of Cruz de Ortiz*, 25 I&N Dec. 601, 605 (BIA 2011). It is undisputed that Petitioner is entitled to a bond hearing before an immigration judge, 8 U.S.C. § 1226(a), and even has a custody redetermination hearing scheduled for

September 3, 2026. However, the purpose of that hearing is "*re*-determination . . . after ICE makes its initial decision to detain." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025). In this case, Petitioner argues there was no "initial decision" made. An after-the-fact hearing "is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause." *Id.* (quoting *Chipantiza-Sisalema v. Francis*, No. 25-cv-5528, 2025 WL 1927931, at *3 (S.D.N.Y. July 13, 2025)). Petitioner has raised constitutional questions and has no genuine opportunity for adequate relief. The Court therefore excuses him from exhausting his administrative remedies.

## III. Discussion

### A. Petitioner's Arrest Pursuant to an Un-Signed I-213 Warrant Was Unlawful.

The Government argues Petitioner is lawfully detained under 8 U.S.C. § 1226(a), which allows the Attorney General to arrest and detain a non-citizen pending a decision on his removal. Such an arrest may not occur unless and until a warrant has been issued. 8 U.S.C. § 1226(a).

On August 27, 2026—four days after ICE arrested Petitioner—the Government filed a copy of the administrative I-200 warrant to its opposition. *See* Gov't Ex. B, ECF No. 4-2. The warrant is dated August 23, 2026. *Id.* On the line requiring the authorized immigration officer to print their name and title, "# 9453 BROWN – (A) SDDO" is typed. *Id.* On the line requiring the name and signature of the officer serving the warrant, "A13481 WU Deportation Officer)" is typed. *Id.* There are two lines requiring signatures from an officer: one by an authorized immigration officer beneath the order to arrest the non-citizen, and one by the officer serving the warrant. *Id.* Both lines were unsigned. *Id.*

Section 1226(a) requires a warrant for arrest. The implementing regulations provide that "a noncitizen may only be arrested and detained pursuant to the Form I-200 Administrative Warrant if it is issued by an authorized official." *Djiwaje v. Bondi*, No. 26-cv-00344, 2026 WL 926753, at *2 (D. Nev. Apr. 6, 2026) (citing 8 C.F.R. § 236.1(b)(1)). The regulation provides: "At the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I–200, Warrant of Arrest." 8 C.F.R. § 236.1(b)(1). The regulations further limit which immigration officials have the authority to issue and serve I-200 warrants. *See id.*; *Djiwaje*, 2026 WL 926753, at *2 (citing 8 C.F.R. §§ 287.5(e)(2)–(3)). Courts have interpreted these regulations as requiring the I-200 warrant to be "signed by an authorized immigration officer who states that he or she has 'probable cause to believe' the named [noncitizen] is removable." *N.S. v. Dixon*, 141 F.4th 279, 282–83 (D.C. Cir. 2025) (citation omitted); *see also Djiwaje*, 2026 WL 926753, at *3 (collecting cases and finding unsigned I-200 administrative warrant could not provide basis for lawful arrest); *see also Joaquin Q. L. v. Bondi*, No. 26-cv-233, 2026 WL 161333, at *2 (D. Minn. Jan. 21, 2026) (collecting cases concluding that "[i]ssuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a)." (alteration in original)). Without a signature and valid warrant, ICE had no authority to arrest or detain Petitioner. *Sergio P. v. Bondi*, No. 26-1538, 2026 WL 497290, at *2 (D. Minn. Feb. 23, 2026).

Now the Government submits a signed copy of that warrant, which was not electronically uploaded to Petitioner's file as of August 27, 2026. ECF No. 9. The Government provides no explanation for why the signed warrant was not in the file four days after Petitioner's arrest, whether the warrant was signed before or during Petitioner's arrest, or whether it was signed later.

A signature on a warrant eight days after it was executed does not retroactively justify a warrantless arrest. Petitioner's arrest and continued detention violates the INA.[1]

**B. ICE Made No Individualized Determination Regarding Petitioner's Detention.**

Even if the Government had produced a lawfully executed warrant, there is no evidence that ICE exercised the discretion permitted and required under 8 U.S.C. § 1226(a). Section 1226(a) provides that, pending a removal decision, the Attorney General "may continue to detain" a noncitizen or release him on bond after making "an individualized determination as to . . . whether the noncitizen is a 'danger to property or persons' and is 'likely to appear for any future proceeding.'" *Dos Reis*, 2026 WL 1746649, at *4 (quoting *Lopez Benitez*, 795 F. Supp. 3d at 493). ICE must exercise that discretion through an individualized custody determination. *Id.*[2]

Here, the record does not reflect any such exercise of discretion. The Government points to the Form I-213 to show ICE made a custody determination before arresting him, considering "various negative factors, including Petitioner having violated the terms of his nonimmigrant status, lack of any lawful immigration status, and very recent entry, as well as various positive factors, including that he has a fear of return to Mexico." ECF No. 4 at 8 (citing Gov't Ex. F, ECF

[1] Without a warrant, immigration officers may only arrest noncitizens under limited circumstances. *See* 8 U.S.C. § 1357. These include when a noncitizen is "entering or attempting to enter the United States" in violation of the law, or when an officer has reason to believe he is present in violation of immigration law *and* "is likely to escape before a warrant can be obtained." 8 U.S.C. § 1357(a)(2). The Government does not invoke § 1357(a)(2), nor does its evidence show any officer had reason to believe Petitioner was likely to escape before a signed warrant could be obtained.

[2] The Government argues *Dos Reis* was wrongly decided because it "place[d] the burden of proof on ICE to demonstrate an alien is not a danger to the community or a flight risk prior to detention, not, as the statute and regulations require, on the alien as a requirement for release from custody." ECF No. 4 at 12. The Court disagrees with this characterization. The Court does not second guess whether ICE's individualized assessment was wrong or demand the Government to prove Petitioner was a danger or flight risk. Rather, the Court finds ICE made no individualized assessment at all. This does not impose a burden on ICE to prove Petitioner is a danger or flight risk in order to justify his detention, nor does it change whether Petitioner must satisfy ICE that his release would be appropriate. The Court is merely examining the record for some evidence that ICE exercised any discretion at all in making a custody determination in the first instance.

No. 4-6). The I-213 is dated August 23, 2026, the same date as Petitioner's arrest. It appears to have been completed after the arrest because it explains how the arrest took place and that it occurred at approximately 8:15 a.m. ECF No. 4-6 at 3. The only reason the I-213 gives for Petitioner's detention is that he is removable due to overstaying his visa and is subject to President Trump's Executive Order titled "Protecting the American People Against Invasion." *Id.* The Form I-286 Notice of Custody Determination merely checks the box that the signing officer "determined that, pending a final administrative determination," Petitioner would be detained. Gov't Ex. D, ECF No. 4-4. These documents do not reflect "an individualized custody determination" but merely a "categorical detention disposition." *Dos Reis*, 2026 WL 1746649, at *4.

ICE officers must exercise discretion under §1226(a) before making a detention determination. "Section 1226(a) authorizes discretionary detention, not automatic detention by policy." *Dos Reis*, 2026 WL 1746649, at *4. The record reflects no such exercise of discretion, so Petitioner's detention under §1226(a) would be unlawful on this record even if the warrant had been signed.

**C. Petitioner's Detention Violates Due Process**

The Due Process Clause "applies to all 'persons' within the United States, including [noncitizens]" in removal proceedings. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To determine whether an individual has been deprived of due process, courts weigh (1) the private interest at stake; (2) the risk of the erroneous deprivation of that interest and the probable value of procedural safeguards; and (3) the burden on the government of providing those procedures. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). All three factors favor Petitioner. First, freedom from confinement "lies at the heart of the liberty interest [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690; *see also Buele Morocoho v. Warden Phila. FDC*, --- F.4th ----, 2026 WL 2546223, at *9 (3d Cir. Aug. 28, 2026). Second, without an individualized assessment as to whether

Petitioner is a danger to public safety or a flight risk, there is a high risk of error. *Picon v. O'neill*, No. 25-6731, 2025 WL 3634212, at *5 (E.D. Pa. Dec. 15, 2025). Third, although the Government has a legitimate interest in ensuring noncitizens in removal proceedings appear when ordered and in protecting the community, those interests can be served through making individualized determinations about noncitizens it seeks to detain. *See Dos Reis*, 2026 WL 1746649, at *5. Petitioner's detention without that determination violates the Due Process Clause.

## IV. Conclusion

The Government unlawfully arrested Petitioner with a defective, unsigned administrative arrest warrant and without conducting any individualized assessment as to whether he was a danger or a flight risk. No after-the-fact bond hearing can remedy an unconstitutional initial deprivation. *See Dzehtisarou v. Mullin*, No. 26-5060, 2026 WL 2211392, at *6 (E.D. Pa. July 31, 2026) ("A post-detention bond hearing does not substitute the requirement for ICE to conduct a pre-detention individualized assessment necessary for the 'initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause.'" (citation omitted)). The Court will therefore grant the petition and order Petitioner's immediate release.